UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE OF RHODE ISLAND OFFICE OF THE GENERAL TREASURER, on Behalf of the EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF RHODE ISLAND, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

Case No. 24-cv-12477
Honorable Linda V. Parker

v.

DOMINO'S PIZZA, INC., RUSSELL J. WEINER, SANDEEP REDDY, JOSEPH H. JORDAN, and ARTHUR P. D'ELIA

Defendants.
_______________________________________/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 24)**

On September 20, 2024, Plaintiff Scott Bender ("Bender") filed this putative class action lawsuit against Defendants alleging violations of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (ECF No. 1.) In February 2025, this Court granted the Employees' Retirement System of the State of Rhode Island's ("Rhode Island") motion to appoint Rhode Island as Lead Plaintiff in this matter. (ECF No. 11.) The matter is presently before the Court on Defendants' Motion to Dismiss. (ECF No. 24.) The motion is fully briefed. (ECF Nos. 26, 27.) Finding

the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is denying Defendants' Motion to Dismiss.

## I. Standards of Review

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

There is also a heightened pleading standard under the PSLRA, requiring plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *See* 15 U.S.C. § 78u-4(b)(2). Claims alleging fraud must also be pled with particularity under Fed.R.Civ.P. 9(b).

## II. Background

Bender filed this federal class action suit on September 20, 2024, on behalf of purchasers of Defendant Domino's Pizza, Inc.'s ("Domino's") securities between December 7, 2023, and July 17, 2024 (the "Class Period"), alleging Defendants violated federal securities laws. (ECF No. 1.) In April 2025, the new Lead Plaintiff, Rhode Island, filed an Amended Complaint. (ECF No. 16.)

Although the Court will not repeat all the allegations set forth in Lead Plaintiff's 109 page Amended Complaint, Rhode Island alleges, in summary, that in 2023 Domino's Pizza Enterprises Limited ("DPE") informed Domino's and the Individual Defendants (Weiner, Reddy, Jordan, and D'Elia)[1] that DPE had experienced and was experiencing significant difficulties in its Japan and France markets. (*Id*. at PageID.302-03.) Despite this knowledge, Domino's and Individual Defendants issued allegedly misleading and false statements that Domino's would meet its net store growth guidance and was set to meet its financial expectations. (*Id*. at PageID.367-86.) For example, Plaintiff alleges that

[1] The Amended Complaint states that from May 2022 to approximately the end of 2024, Defendant Russell J. Weiner ("Weiner") served as Domino's CEO, Sandeep Reddy ("Reddy") served as Domino's CFO, Joseph H. Jordan ("Jordan") served as Domino's President – U.S. and Global Services, and Arthur P. D'Elia ("D'Elia") served as Domino's Executive Vice President, International. (ECF No. 16, at PageID.309-10.) Weiner, Reddy, Jordan, and D'Elia were collectively referred to as the "Individual Defendants" and will be in this Opinion as well. (*Id*. at PageID.310.)

Defendants gave misleadingly optimistic projections of Domino's international growth and referred to closures as "idiosyncratic[,]" omitting the larger context of DPE's ongoing difficulties. (*Id*. at PageID.369, 374-75.) These allegations were supported, in part, by Confidential Witness testimony that DPE senior management knew the full extent of DPE's struggles and was allegedly in close communication with Domino's. (*Id*. at PageID.307, 392.)

Plaintiff also alleges that Defendants Weiner and Jordan profited off these misrepresentations and made the false statements specifically to artificially inflate Domino's stock price before selling their shares in February and April of 2024, for $12.8 million and $1.17 million respectively. (*Id*. at PageID.362-67, 391-92.)

Plaintiff's Amended Complaint sets forth two claims: (1) Violation of Section 10(b)[2] of the Exchange Act and Rule 10b–5[3] promulgated against all

[2] Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b).

[3] Section 20(a) states, "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. 240.10b-5.

Defendants and (2) Violation of Section 20(a) of the Exchange Act against the Individual Defendants. (ECF No. 16, at PageID.399-403.) On Count I, Plaintiff alleges that Defendants knowingly and/or recklessly made false statements[4] and omitted material facts to mislead the public about Domino's operations. Both parties address Count II minimally and only to the extent it relies on Count I. (ECF No. 24, at PageID.485; ECF No. 26, at PageID.1318 n.14.)

## III. Elements of the Claims

To state a claim under Section 10(b) or Rule 10b-5, a plaintiff must allege the following: "(1) a misrepresentation or omission; (2) of a material fact that the defendant had a duty to disclose; (3) made with scienter; (4) justifiably relied on by [the] plaintiffs; and (5) proximately causing them injury." *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 668 (6th Cir. 2005) (citations omitted). Under the PSLRA's heightened pleading requirements, any private securities complaint alleging that the defendant made a false or misleading statement must also:

> "(1) … specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the

[4] The statements Plaintiff alleges are false and misleading are identified at ¶ 158, 160, 162-63, 165, 167-69, 171, 173, 175-79, 181-83, 185, 187, 189-90, 192-93, 195-96, and 198-99 of the Amended Complaint. (ECF No. 16.) Following the statements are explanations of how they were false and/or misleading.

> complaint shall state with particularity all facts on which that belief is formed [and]
>
> (2) ... state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind."

*Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (emphasis in original) (quoting 15 U.S.C. § 78u–4(b)(1), (2)). Stated differently, the PSLRA "requires [the] plaintiff to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 and n.12 (1976)). In seeking to dismiss Plaintiff's Amended Complaint, Defendants argue that their allegations do not sufficiently establish misrepresentations or omissions of material facts and scienter.

The Sixth Circuit defines the scienter requirement for proving securities fraud as "knowing and deliberate intent to manipulate, deceive, or defraud and recklessness[.]" *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 469 (6th Cir. 2011) (internal quotation marks and citation omitted). "Recklessness" is defined as "'highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be obvious that any reasonable man would have known it.'" *Id*. at n.3 (quoting *PR Diamonds, Inc.*

*v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004) *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011)).

In *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (en banc), the Sixth Circuit laid out nine "helpful" but non-exhaustive factors to assess scienter in cases of alleged securities fraud. *City of Monroe*, 399 F.3d at 683-88.[5] The Supreme Court advised in *Tellabs*, "[t]o qualify as 'strong' …, an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id*. at 314. The *Tellabs* Court emphasized that courts should take a holistic approach when evaluating the plaintiff's complaint, focusing on "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id*. at 326; *see also Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 917 (6th Cir. 2007)

---

[5] "(1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs." *Helwig*, 251 F.3d at 552.

("We … employ a 'totality of circumstances' test in assessing whether a plaintiff has adequately alleged scienter.").

## IV. Defendants' Arguments and Analysis

For Count I to survive the Motion to Dismiss, Plaintiff must allege misrepresentations or omissions of material facts as well as scienter. *Tellabs*, 551 U.S. at 313.

### a. Misrepresentations or Omissions of Material Facts

The Defendants argue that their alleged misrepresentations or omissions fall into four protected categories: (1) forward-looking statements that are non-actionable under the PSLRA safe harbor provision; (2) optimistic statements about Domino's business that are non-actionable, immaterial puffery; (3) accurate statements about historical performance; and (4) non-actionable risk disclosures. (ECF No. 24, at PageID.460-74.)

#### i. Forward Looking Statements

Defendants argue that the alleged forward-looking statements are non-actionable. (ECF No. 24, at PageID.460.)

The PSLRA's safe harbor provision protects "forward-looking statement[s]." 15 U.S.C. § 78u-5(i)(1). Defendants claim their statements fall under the narrower safe harbor of "forward looking statements" accompanied by meaningful cautionary language that are protected "regardless of the actual state of mind. *See*

*Miller v. Champion Enters. Inc.*, 346 F.3d 660, 672 (6th Cir. 2003). To meet this standard, the cautionary language should be tailored to the company's circumstances, not generic or boilerplate. *See Hensley v. Imprivata, Inc.*, 260 F.Supp.3d 101, 120 (D. Mass. 2017); *see also Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*, 966 F.Supp.2d 525, 549, 551 (M.D.N.C. 2013).

As cautionary statements, Defendants point to language in Domino's Investor Day presentation, Domino's 8-K filings and press releases, and risk disclosures in Domino's SEC filings. (ECF No. 24, at PageID.462.) Defendants' warnings that Domino's "cannot guarantee future results, levels of activity, performance or achievements" and that "forward-looking statements are inherently subject to risks, uncertainties and assumptions" appear to be the very type of boilerplate warnings that do not meet the standard for cautionary statements. (*Id.* at PageID.462-63.); *Helwig*, 251 F.3d at 558. Accordingly, Defendants' statements fall into the broader "forward-looking statements" that must be accompanied by lack of knowledge for Defendants to fall into the PSLRA safe harbor.

Turning to the statements themselves, Defendants aver that Plaintiff did not allege any statement was false or misleading when it was made, nor did Plaintiff allege any actionable omission. (ECF No. 24, at PageID.465, 467.) While Defendants' statements on Domino's "Hungry for MORE" strategy and potential growth may be forward-looking, other statements, such as Defendant Reddy's

hopes that past closures are in "the rear view mirror" or Weiner's statement that Domino's expected to "lap the one-time closures . . . and [] step up significantly in the back half of the year" were backwards-looking concerning a future event and did not fall into the PSLRA safe harbor. (ECF No. 16, at PageID.369, 376.); *see Dougherty*, 905 F.3d at 983-84.

As for actionable omissions, Defendants claim that Domino's had no affirmative duty to disclose and that Plaintiff did not allege Defendants had any knowledge of DPE's struggles prior to reports on July 17, 2024. (ECF No. 24, at PageID.468-69.) However, *Helwig* established a duty to speak "fully and truthfully" once material facts are disclosed. *Id*. at 561. Plaintiff alleges that Defendants knew the true state of DPE's business since at least 2023 based on their monitoring of DPE's geographic markets and therefore Defendants had a duty to disclose their DPE knowledge when they began speaking about international markets. (ECF No. 16, at PageID.357-58; ECF No. 26, at PageID.1283, 1287.)

Given the alleged facts, the Court finds the Defendants' broad forward-looking statements do warrant dismissal for falling into the PSLRA safe harbor. However, because Plaintiff also alleges that Defendants made backwards-looking statements about the future and made actionable omissions, these claims are not protected by the PSLRA safe harbor and support a Section 10(b) claim.

ii. **Immaterial Puffery**

Defendants also claim that several statements Plaintiff points to as misrepresentation are "mere puffing or corporate optimism" and thus are non-actionable. (ECF No. 24, at PageID.470.) Statements are immaterial only if "they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance." *In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 570 (6th Cir. 2004).

While Defendants' "Hungry for MORE" slogan may be puffery, Defendants' other allegedly immaterial statement include their responses to analyst questions on Domino's performance (ECF No. 16., at PageID.374, 384.) and even a response directly addressing DPE's effect on Domino's. (*Id*. at PageID.386.) A reasonable shareholder could draw significant inferences from Defendants' statements, such as "idiosyncratic closures that we've experienced in 2023 [] really, hopefully, are mostly behind us as we go into 2024" or that DPE's performance "doesn't change the long-term trajectory of the business." (*Id*. at PageID.374, 386.) As a result, this Court cannot find that Defendants' alleged statements were immaterial as a matter of law.

iii. **Accurate Statements of Historical Performance**

Defendants argue that Plaintiff's Section 10(b) claim cannot be supported by accurate statements about past performance. (ECF No. 24, at PageID.471.) Defendants specifically point to Domino's statements in its Q1 2024 form 10-Q

describing Domino's increased revenues and past retail sales growth as protected description of historic performance.

"[A] violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data." *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997). Indeed, "[t]he disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *Id.*; *In re Ford*, 381 F.3d at 570 (quoting *Sofamor*, 123 F.3d at 401 n.3).

Plaintiff responds that Defendants' cases do not involve disclosures that were later contradicted by omitted information. (ECF No. 26, at PageID.1291 n.4.) However, if the Court adopts Plaintiff's rule, it would "require almost unlimited disclosure on any conceivable topic related to an issuer's financial condition whenever an issuer released any kind of financial data." *Miller*, 346 F.3d at 682.

Accordingly, the allegations concerning Domino's statements in its Q1 2024 form 10-Q do not support a Section 10(b) claim.

iv. **Risk Disclosures**

Plaintiff alleges that the risk disclosures in Defendants' 10-K form, filed in 2023, were misleading. (ECF No. 16, at PageID.378-80.) Plaintiff argues that the statements mislead because they do not address the alleged problems at DPE at that time. (*Id.*) The Defendants move to dismiss on this language, arguing that SEC

filings are inherently prospective in nature and that the risk disclosures were sufficient, even if they were not as detailed as the Plaintiff may have wanted. (ECF No. 24, at PageID.472-74.) Plaintiff responds that because DPE had already failed to reach growth targets in Japan and France at the time of the risk disclosures, then they were misleading. (ECF No. 26, at PageID.1291.)

The Sixth Circuit has indeed held that, not only are SEC filings inherently prospective, but the use of future tense, "standing alone, would not cause a reasonable investor to infer anything about the present. *Newtyn Partners, LP v. All. Data Sys. Corp.*, 165 F.4th 947, 964 (6th Cir. 2026). As the statements in question are prospective, this Court need not look to whether Domino's knew of DPE's troubles at the time of disclosure. Instead, this Court finds the risk disclosures attached to Domino's 10-K form filed in 2023 do not support a Section 10(b) claim.

In summary, the Court finds Plaintiff alleges sufficient facts to plausibly support that Defendants made false statements or omissions. However, this outcome is in spite of Domino's statements in its Q1 2024 form 10-Q and the risk disclosures in its 2023 10-K form.

**b. Scienter**

Defendants also argue that Plaintiff does not plead facts giving rise to a strong inference that they acted with scienter. (ECF No. 24, at PageID.474.)

In the original Complaint, Bender's explanation of scienter was limited to the fact that Defendants had "motive and opportunity to commit fraud" and "actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time." (ECF No. 1, at PageID.17.) Looking to Rhode Island's Amended Complaint, Defendants extracted four *Helwig* factors: one, three, six, and nine. (ECF No. 24, at PageID.476.) Plaintiff responded that not only are the *Helwig* factors not exhaustive, but the Amended Complaint alleges divergence between internal reports and external statements (factor two) as well. (ECF No. 26, at PageID.1306, 1312.)

Addressing insider trading (factor one), Defendants argue that Weiner and Jordan's transactions occurred well before Domino's revised its guidance, were consistent with prior sales, and left Weiner and Jordan with substantial holdings in Domino's. (ECF No. 24, at PageID.477 (*see also* ECF No. 27, at PageID.1336).) Indeed, Defendants claim the sales in February 2024 were merely because the options "were nearing expiration." (ECF No. 24, at PageID.477.)

However, as Plaintiff notes, the options in question were at least five months before their expiration period, and three and five months before the end of the Class Period. (ECF No. 26, at PageID.1307-08.) In addition, while certain sales were under a 10b5-1 trading plan, Weiner's stock sale in February 2024 was not.

(ECF No. 24, at PageID.477-78; ECF No. 26, at PageID.1309.) Finally, retaining substantial holdings after a sale does not lower the inference of scienter when a defendant reaps a large profit from the sales. *See Shope v. Rocket Companies, Inc.*, 660 F.Supp.3d 647, 683 (E.D. Mich. 2023). In this case, some Individual Defendants allegedly earned $10.3 million in net profit. (ECF No. 16, at PageID.391.) Accordingly, factor one weighs in favor of the Plaintiff.

Turning to divergence between internal reports and external statements (factor two), Plaintiff claims the Amended Complaint alleges divergence between Defendants' stockholder guidance compared with their knowledge of problems at DPE. (ECF No. 26, at PageID.1312.) However, Plaintiff's reference to divergent internal reports appears isolated to general access to "reports and communications describing" DPE's operation as Domino's largest franchisee. (ECF No. 16, at PageID.394.) Such "generalized allegations of Individual Defendants' access to documents and internal information" lack specificity to support scienter. *See In re Huntington Bancshares Inc. Sec. Litig.*, 674 F.Supp.2d 951, 972 (S.D. Ohio 2009). Accordingly, factor two weighs in favor of the Defendants.

Closeness in time between the allegedly fraudulent statements and later disclosure of inconsistent information can also weigh towards plaintiffs (factor three). Defendants argue that the "months elapse between allegedly false or misleading statements and the purported corrective disclosure" suggests a lack of

scienter. (ECF No. 24, at PageID.479.) Plaintiff responds that the seven weeks between the alleged misstatements on May 30, 2024, and the corrective guidance on July 18, 2024, is sufficient to show that Defendants knowingly made a false statement before they corrected it. (ECF No. 26, at PageID.1315.)

To weigh in a plaintiff's favor, the temporal-proximity factor must be accompanied by specific facts that defendants "knew or recklessly disregarded the falsity of the statements." *Konkol v. Diebold, Inc.*, 590 F.3d 390, 401 (6th Cir. 2009), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011). The Amended Complaint alleges Defendants' knowledge of falsity several times, based on their continued communications with DPE and Confidential Witness testimony. (ECF No. 16, at PageID.353, 357-59, 392-93.) Accordingly, with a seven-week gap, and alleged knowledge, factor three weighs in favor of the Plaintiff.

Addressing Defendants allegedly disregarding the most current factual information before making statements (factor six), Defendants claim that Plaintiff alleges no facts that Defendants had "real-time knowledge" of DPE's operations nor that any Individual Defendant had any information that contradicted any of his statements. (ECF No. 24, at PageID.480.) Defendants further argue that the only factual allegations of conflicting information were available to the general

investing public and therefore not supportive of scienter in this instance. (*Id*. at PageID.481.)

However, Plaintiff alleges that DPE's problems (that were publicly known by the end of the Class Period) existed throughout the class period. (ECF No. 16, at PageID.352-62.) And Defendants' statements often refer to internal information on DPE that was not publicly available, such as their "good visibility" into their expectation of master franchisees and insight into the "underlying health" of DPE's markets. For the market in France, Reddy even admitted the "operational execution issues" and stated that DPE was giving Domino's weekly updates and monthly conversations to monitor the issue. (*Id*. at PageID.357-58.) In light of Defendants' alleged contemporaneous knowledge of DPE's struggles, factor six weighs in favor of the Plaintiff.

Finally, turning to Defendants' alleged self-interest in saving their salaries or jobs (factor nine), this factor supports Plaintiff only if it has alleged self-interest beyond mere desire for the company to appear successful or desire to protect their position within a company. *PR Diamonds*, 364 F.3d at 690.

Defendants' interpretation of the Amended Complaint is that the executives' sole motive to increase the stock price was to "avoid disappointing investors" particularly as the Individual Defendants were new management brought in to improve performance "after [Domino's] dramatic fall continued through the

beginning of 2023." (ECF No. 24, at PageID.481; ECF No. 16, at PageID.327-28.) Plaintiff's response mirrored those arguments, claiming only that the motive to avoid disappointing investors after a decline went beyond "motives common to corporations and executives." (ECF No. 26, at PageID.1316.) Accordingly, as the Individual Defendants' motives do not appear to differ from that of all corporate executives' desire to appear successful, factor nine weighs in favor of the Defendants.

As instructed by *Tellabs,* reviewing these factors holistically, Rhode Island has strong arguments for scienter given the timing of the Individual Defendants' stock trades, the closeness in time between Defendants' allegedly fraudulent statements and later disclosures, and Defendants' alleged disregard of current information. For these reasons, Lead Plaintiff alleges sufficient facts to give rise to a strong inference that Defendants acted with scienter.

**c. Plaintiff's Section 20(a) of the Exchange Act Claim**

The only deficiency in the Section 20(a) claim alleged in the Motion to Dismiss is the lack of a claim under Section 10(b). (ECF No. 24, at PageID.485.) In response, Plaintiff agrees with the underlying logic, but solely disputes whether there is a claim under Section 10(b). (ECF No. 26, at PageID.1318 n.14.) Accordingly, in light of the potential claim under Section 10(b), this Court will

deny the Motion to Dismiss on Count II of the Amended Complaint. (ECF No. 1, PageID.25.)

## V. Conclusion

The Court finds that Lead Plaintiff alleges sufficient facts to satisfy the pleading requirements in Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the PSLRA. Plaintiff's allegations also support the Section 20(a) claim.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (ECF No. 24) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: October 22, 2026